UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF INDIANA, ex rel. NILDA DURANY, M.D., | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) CAUSE NO. 1:12-cv-1839-WTL-DKL<br>) |
| MADISON COUNTY COMMUNITY HEALTH CENTER, et al., | )<br>)<br>) |
| Defendants. | ) |

## ENTRY ON MOTIONS TO DISMISS

This cause is before the Court on two motions to dismiss filed by the Defendants (dkt. nos. 58 and 60). The motions are fully briefed and the Court, being duly advised, rules as follows.

**Factual Background**

Plaintiff Nilda Durany filed this action on behalf of the United States of America and the State of Indiana, both of which have declined to intervene. Durany, who is a physician, asserts claims pursuant to the False Claims Act, 31 U.S.C. § 3729, *et seq.*, and the Indiana False Claims and Whistleblower Protection Act, Ind. Code 5-11-5.5-1, *et seq.*, against her former employer, the Madison County Community Health Center ("MCCHC") and two employees of MCCHC. In a nutshell, Durany alleges that MCCHC is a "pill mill" that profits by prescribing unnecessary narcotic medication to the vast majority of its patients. Because a majority of those patients' visits and prescriptions are paid for by Medicare or Medicaid, Durany alleges that MCCHC is

guilty of submitting false claims for payment to the federal and state governments for their office visits and prescriptions.

**Motion Pursuant to Rule 12(b)(1) (Dkt. No. 58)**

In their first motion to dismiss, the Defendants argued that Plaintiff Nilda Durany lacked standing to pursue the claims in this suit because she filed a petition under Chapter 7 of the United States Bankruptcy Code during the pendency of this case and therefore any interest she had in this matter was transferred to the bankruptcy estate, giving the bankruptcy trustee, not Durany, exclusive standing to pursue this case. That argument is now moot, because the bankruptcy trustee—who clearly has standing—has since appeared as a plaintiff in this matter. *See Korte v. Sebelius*, 735 F.3d 654, 667 n.8 (7th Cir. 2013) ("Where at least one plaintiff has standing, jurisdiction is secure and the court will adjudicate the case whether the additional plaintiffs have standing or not.").

The Defendants also argue that Durany herself cannot continue to pursue this case along with the bankruptcy trustee. This argument appears to be about semantics at this point; Durany concedes that the trustee is the real party in interest and the case is now proceeding for the benefit of the bankruptcy estate. Accordingly, there is no basis to dismiss the complaint on standing grounds, and the motion to dismiss is **DENIED**.

Finally, the Defendants argue that, based upon the doctrine of judicial estoppel, any recovery in this action must be limited to the amount necessary to satisfy the creditors in the bankruptcy estate because Durany failed to list this suit as an asset in her bankruptcy filings. Because of the evolving nature of the issues in this case, the Defendants did not raise that issue until their reply brief, and the trustee has not had the opportunity to respond to it. Accordingly, the trustee shall file a surreply addressing that issue **within 14 days of the date of this Entry**.

The Defendants may file a response to the surreply **within 7 days of the date the surreply is filed**. The parties should include in their briefs a discussion of whether it is appropriate to decide the issue by means of a motion to dismiss, or whether it is a determination better made at a later stage of the case.

**Motion Pursuant to Rule 12(b)(6) (Dkt. No. 60)**

The Defendants also move to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the complaint fails to satisfy Rule 9(b)'s requirement that allegations of fraud be pled with particularity. "While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the pleading 'ordinarily requires describing the who, what, when, where, and how of the fraud.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, __ F.3d __, 2014 WL 3765935 (7th Cir. Aug. 1, 2014) (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)). "One of the purposes of the particularity and specificity required under Rule 9(b) is 'to force the plaintiff to do more than the usual investigation before filing his complaint.'" *Id.* (quoting *Ackerman v. Northwestern Mutual Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999)). The Court notes that the issue before it is not whether each and every factual allegation in the complaint is pled with particularity, but rather whether enough facts are pled with particularity to support Durany's allegation that the Defendants made false claims to the state and federal governments.

The Defendants' argument is that "in the context of health care fraud, the Seventh Circuit has required that a relator at the pleading stage 'present . . . evidence at an individualized transaction level to demonstrate' a violation of the [False Claims Act]." Defendants' Brief at 5 (quoting *United States ex rel. Fowler v. Caremark, L.L.C.*, 496 F.3d 730, 740 (7th Cir. 2007), *overruled in irrelevant part by Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir.

3

2009)). Thus, the Defendants argue, the complaint in this case must be dismissed because Durany does not identify by name any specific patient who was knowingly seen in an unnecessary office visit and/or prescribed an unnecessary drug, show why the visit and/or drug were unnecessary, and show that a claim for payment was made to the government for that patient by the Defendants. The Defendants are incorrect to read *Fowler* as creating a special rule for the health care fraud context; rather, the amount of particularity required depends on the circumstances of each case. In *Fowler*, the Seventh Circuit noted that the plaintiffs were simply not privy to all of the information necessary to maintain a claim under the False Claim Act. They knew that their employer sent prescription drugs to federal employees and billed the government for them, and they knew that a certain percentage of those drugs were returned by the employees. However, given the nature of their jobs, the plaintiffs had no way of knowing— and therefore could not make any specific allegations about—whether their employer refunded the government's payments for the returned prescriptions or otherwise reconciled their account with the government such that they had not received funds to which they were not entitled. They alleged that the employer did not always do so, but they had no information about any specific instance of malfeasance and no way of actually knowing what had occurred.

The allegations in this case are of a different nature than those in *Fowler*. In this case, Durany alleges that the business model of MCCHC was based on prescribing narcotics to the vast majority of its patients and requiring monthly visits to renew those prescriptions in order to increase the number of patient visits, most of which were paid for, in whole or in part, by the state or federal government. Durany further alleges that she was pressured by MCCHC management to prescribe narcotics to her patients against her medical judgment because that is what the clinic's patients expected, and that another doctor was fired for complaining about the

4

prescription practices. In other words, Durany alleges that the majority of MCCHC's patients came to the clinic each month not for medical reasons, but because they were addicted to narcotics and the clinic freely supplied them, not to treat the patients, but to make a profit. Durany alleges that she saw hundreds of patients, reviewed their records, and made a medical judgment that they had been improperly prescribed narcotics at the clinic for years; in addition, she alleges that she personally was pressured to continue the practice. Durany also alleges that a large percentage of those patients' visits were paid for by the government. Unlike the plaintiffs in *Fowler*, Durany was in a position to know that a large number of the clinic's patients came into the clinic for medically unnecessary office visits in order to obtain narcotics and had those visits and drugs paid for by the state or federal government, and that request for payment was made via a form that includes certification that the services billed for were "medically indicated and necessary for the health of the patient." She alleges those to be the facts. That is sufficient at this stage of the case.[1]

The argument made by the Defendants here is similar to that made by the Defendant in *Lusby v. Rolls-Royce Corp.*, 570 F.3d 849 (7th Cir. 2009). In that case, the plaintiff alleged that the defendant was selling non-compliant parts to the military—something he was in a position to know—but he could not point to any specific request for payment that was made for the non-compliant parts that was accompanied by a certification of compliance because he was not privy to the defendant's billing records. The Seventh Circuit rejected the defendant's argument that the lack of this information at the pleading stage was fatal to the plaintiff's fraud claim:

---

[1]The Court notes that *Crews v. NCS Healthcare of Ill.,* 460 F.3d 853 (7th Cir. 2006), was an appeal from a summary judgment ruling. At that stage, obviously, a plaintiff must have specific evidence to support her claim, not simply make allegations.

> We don't think it essential for a relator to produce the invoices (and accompanying representations) at the outset of the suit. True, it is essential to show a false statement. But much knowledge is inferential—people are convicted beyond a reasonable doubt of conspiracy without a written contract to commit a future crime—and the inference that Lusby proposes is a plausible one. . . . [E]ven a requirement of proof beyond a reasonable doubt need not exclude all possibility of innocence; nor need a pleading exclude all possibility of honesty in order to give the particulars of fraud. It is enough to show, in detail, the nature of the charge, so that vague and unsubstantiated accusations of fraud do not lead to costly discovery and public obloquy.

*Id.* at 854-55. Durany also has alleged sufficient facts to support the plausible inference that the Defendants made false claims to the government to obtain payment for medically unnecessary office visits and/or drugs. Her complaint contains sufficient detail to put the Defendants on fair notice of what she is accusing them of doing. Accordingly, the Defendants' motion to dismiss for failure to state a claim is **DENIED**.

    SO ORDERED: 9/15/14

*[signature: William T. Lawrence]*

    Hon. William T. Lawrence, Judge
    United States District Court
    Southern District of Indiana

Copies to all counsel of record via electronic notification